**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

SHKUMBIN BALIDEMAJ,

                    Plaintiff,               **REPORT AND RECOMMENDATION**

    v.                                **19-CV-4468 (RPK) (ST)**

2301 KINGS LLC,

                    Defendant.
----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

        Plaintiff Shkumbin Balidemaj ("Plaintiff") brought an action against Defendant 2301 Kings, LLC ("Defendant") alleging, *inter alia*, failure to pay minimum wage and overtime violations under both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Now before the Court is Defendant's Motion for Summary Judgment ("Motion") on all claims.

        The Honorable Rachel P. Kovner referred Defendant's Motion to the undersigned to issue a Report and Recommendation.

        For the below stated reasons, this Court respectfully recommends that Defendant's Motion for Summary Judgment be granted in its entirety.

    **I.**       **BACKGROUND**

    **A. Relevant Facts[1]**

        Defendant 2301 Kings LLC owns an apartment building with 94 apartment units at 2301 Kings Highway in Brooklyn, New York (the "Building"). *See* Plaintiff's Response to Defendant's

---

[1] Since neither party provided a Statement of Facts in their Motion papers, the Court will refer to Defendant's Undisputed Facts with Plaintiff's responses at ECF 55-1 and, where appropriate, cite Plaintiff's admissions elsewhere in the record. Since some facts will be discussed at length *infra*, the Court will only briefly review those facts now.

Statement of Undisputed Facts, at ¶ 1, ECF 55-1. Yisroel Landau was the On-Site Manager for Defendant. *Id.* at ¶ 2. Plaintiff was the sole Superintendent/Janitor at the Building from at least 2011 until March 2018. *Id.* at ¶¶ 3, 16.[2] Defendant posted Notices to the tenants designating Plaintiff as the Superintendent. *Id* at ¶ 4.[3]

Plaintiff's work as Superintendent included: (a) Making repairs to apartments occupied by tenants; (b) Picking up supplies for the management office that were paid for by Defendant; (c) Collecting and removing trash; and (d) Removing ice and snow from the premises. *Id* at ¶ 5.[4] Both parties also agree that Defendant hired a porter to handle garbage, clean the Building and assist Plaintiff in some of his other work Sunday through Friday. *Id.* at ¶ 6.[5]

Plaintiff indicates that he was "initially hired to work 9-5pm Monday through Friday." *Id.* at ¶ 7 (Plaintiff's Response at ¶ 1).[6] Plaintiff also concedes that Defendant paid him $2,166.67 per month, which Plaintiff further alleges came out to $500.00 each week. *Id.* at ¶¶ 43-44. Additionally, Plaintiff admits that Plaintiff lived "rent free" in an apartment provided by Defendant, that Defendant "took over" paying Plaintiff's utilities, and that Defendant gave Plaintiff $50.00 each month for Plaintiff's telephone bill. *See id.* at ¶ 47 and ¶¶ 45-46 respectively.

Finally, "[f]rom at least 2014 through March 2018 (when [Plaintiff] stopped working at the Building), Plaintiff worked at least 7 to 8 hours a day for different employers in Manhattan." *Id.*

---

[2] While Plaintiff "disputes" this fact in his response, Plaintiff concedes this fact in his deposition testimony. *See* Deposition of Plaintiff, Shkumbin Balidemaj, dated March 11, 2021. ("Pl. Tr.") at 10:18-25; ECF 55-7, and Plaintiff's Response to Defendant's Int. No. 9, ECF 55-5. Moreover, to the extent Plaintiff argues, and Defendant does not appear to dispute, that Plaintiff began employment in 2010 instead of 2011, *see* Opp. at 12, ECF 55, the Court's analysis below remains the same. Finally, while the Statement of Undisputed Material Facts states Plaintiff worked until October 2018 in ¶ 3, it is later clarified in ¶ 16 that Plaintiff stopped working for Defendant in March 2018.
[3] The Notice posted can be found at ECF 54-3 [Superintendent Designation Poster].
[4] Note, Plaintiff claims that he was not compensated for *additional* work besides the above tasks, which will be discussed *infra*. For now, however, the above suffices as an overview of Plaintiff's work that both parties agree on.
[5] While Plaintiff argues the porter did not assist on *Saturdays*, that issue is immaterial when considering the facts/actual calculations *infra* regarding Plaintiff's hours worked.
[6] Plaintiff's overtime claims will be discussed *infra* so no further facts are needed at this point besides the initial employment arrangement.

at ¶ 16.  In 2014, Plaintiff worked as supervisor of a maintenance crew for PBM LLC ("PBM"). *Id.* at ¶ 17.[7]  Toward the end of 2015, Plaintiff left PBM and continued to work from 5:30pm to 12:30am for another employer, Guardian Services Industries ("Guardian") in Manhattan.  *Id.* at ¶ 27.  Notably, Defendant never told Plaintiff that he could not work a second job while employed by Defendant.  *Id.* at ¶ 19 and ¶ 31.  Furthermore, Plaintiff does not recall any instances in which either PMB or Guardian refused to pay Plaintiff for any hours because Plaintiff had to return from Manhattan to address an emergency for Defendant.  *Id.* at ¶ 16, ¶ 19, and ¶ 31.[8]

## B.  Procedural History

Plaintiff filed his original Complaint on August 2, 2019.  *See* ECF 1.  On April 25, 2022, Plaintiff filed an Amended Complaint ("Am. Compl."), in which Plaintiff added a single additional claim.  *See* ECF 45.  Plaintiff alleges claims under "the minimum wage and overtime provisions" pursuant to the Fair Labor Standards Act and New York labor laws.  *See* Am. Compl. at ¶¶ 1-3.

As noted earlier, Plaintiff alleges that his job duties included, but are not limited to, "work related to the building of the Defendant," such as "servicing rental units for the rental property on a daily basis, picking up supplies for the management office, making repairs to apartments comprised in the property and occupied by tenants, collecting trash and removal thereof, from tenants' apartments daily, [and] removing ice and snow from the premises."  *Id.* at ¶ 6.

Plaintiff further alleges that it was his expectation that "he would work 40 hours per week, plus overtime, enjoy vacation and be paid for spread of hours."  *Id.* at ¶ 10.  Moreover, Plaintiff alleges that "[a]s compensation for said services, Plaintiff only received free rent with a value of approximately $1,200.00 on a monthly basis and a flat rate weekly compensation stated as 'salary'

---

[7] Plaintiff's second jobs will be discussed at-length regarding Plaintiff's overtime and minimum wage claims *infra*. Specifically, the Court will review the record regarding Plaintiff's physical presence required at these jobs.
[8] Again, the issue of whether Plaintiff's physical presence was required at this job will be discussed *infra*.

irrespective of the number of hours worked by plaintiff for the period." *Id.* at ¶ 11. As noted above, Plaintiff alleges that he was paid "$500.00 per week." *Id.* at ¶ 17.

Importantly, Plaintiff further alleges that he "often worked for upwards of 168 hours every week." *Id.* More specifically, Plaintiff alleges that he: "worked from Monday to Saturday between the hours of 8 a.m. to 5pm, variously as a porter, janitor, cleaner and handyman, a total of 40 hours on Mondays through Saturdays. For the balance of the days from 5 p.m till 12 midnight and 12.00am till 8am and 24 hours and on Sundays he was on call." *Id.*[9] Finally, Plaintiff alleges that "during these periods, he was required to remain physically on the premises." *Id.*

Per the above allegations, Plaintiff seeks minimum wage and overtime payment under the FLSA. (*See* First and Second Causes of Action). *Id.* at ¶¶ 26-31; and ¶¶ 32-34. Additionally, Plaintiff seeks compensation for wages and overtime under the NYLL, specifically Title 12, Section 142-3.1, Section 142-3.2, and Section 142-2.4. (*See* Third, Fourth and Fifth Causes of Action). *Id.* at ¶¶ 35-36; ¶¶ 37-38; and ¶¶ 39-40. Furthermore, Plaintiff also alleges Unjust Enrichment and Breach of Contract claims arising from expenses in the renovation of Plaintiff's apartment. (*See* Sixth and Seventh Causes of Action). *Id.* at ¶¶ 41-42; and ¶¶ 43-45. Finally, Plaintiff alleges that Defendant failed to keep "accurate time records" and that Defendant failed to "provide wage statements." (*See* Eighth and Ninth Causes of Action). *Id.* at ¶¶ 46-48; and ¶¶ 49-51.

## II.    JURISDICTION

This action arises in part under 29 U.S.C. § 201, *et. seq.* of the FLSA. This Court has federal question jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 2l6(b). This Court's supplemental jurisdiction is also invoked in relation to the causes of action arising under state law.

---

[9] While this sentence may be unclear as written, it is intentionally quoted verbatim to show how Plaintiff alleged his hours worked in his Amended Complaint.

### III.    LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted).  "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper."  *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996).

A "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).  The moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a showing sufficient to establish the existence of [each] element essential to [his] case . . . since a complete failure of proof concerning an essential element of [his] case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV.     DISCUSSION

### A. This Court Recommends Granting Defendant Summary Judgment for Plaintiff's Third, Fourth, Fifth and Ninth Claims Under the NYLL Because Plaintiff is Properly Designated as an Exempt Janitor Under the Minimum Wage Order

*1. Applicable Legal Standard*

The New York Labor Law is a remedial statute designed to combat and eliminate employment "at wages insufficient to provide adequate maintenance for [the employees] and their families." *See Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399 (E.D.N.Y. 2014); N.Y. Lab. Law § 650. "While the NYLL does not contain any statutory requirements regarding overtime pay, *see Ballard v. Cmty. Home Care Referral Serv., Inc.*, 264 A.D.2d 747, 747 (2d Dep't 1999), regulations promulgated by the New York Department of Labor (the "Department of Labor") generally require employers to pay overtime wages for all hours worked in excess of forty hours per week, so long as the employees are not exempt under one of various statutory categories." *Koljenovic*, 999 F. Supp. 2d at 399 (citing *Severin v. Project Ohr, Inc*., No. 10–cv–9696, 2012 WL 2357410, at *6 (S.D.N.Y. June 20, 2012)).

"The Department of Labor has promulgated specific minimum wage regulations for the 'Building Service Industry.' " *Id.* (citing 12 N.Y. Comp. Codes R. & Regs. tit. 12 ("N.Y.C.R.R."), §§ 141 et seq. (the "Minimum Wage Order")).   "The Minimum Wage Order requires that employees in the building service industry, 'except a janitor in a residential building,' be paid at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty hours per week." *Id.* (citing § 141–1.4).  "The regulations 'do not provide for either minimum wages or overtime wages for 'janitors,' who are instead paid based on the number of units in the building in which they worked.' " *Id.* (quoting *Niemiec v. Ann Bendick Realty*, No. 04–cv–00897, 2007 WL 5157027, at *4 n. 6 (E.D.N.Y. Apr. 23, 2007)).

Defendant bears the burden of establishing that the janitorial exemption set forth in Section

6

141–3.4 applies to Plaintiff's work while employed by Defendant. *Id.* (internal citations omitted).[10]  "Deciding whether the exemption applies may require the court to consider both questions of fact and law; the question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the overtime provision is a question of law." *Id.* (internal citations omitted).

> The Minimum Wage Order defines a "janitor in a residential building" as follows:
>
> A janitor is a person employed to render any physical service in connection with the maintenance, care or operation of a residential building. Where there is only one employee, such employee shall be deemed the janitor. Where there is more than one employee in the building, the employer shall designate an employee who lives in the building as the janitor. No building may have more than one janitor.

12 N.Y.C.R.R. § 141–3.4.; *Koljenovic*, 999 F. Supp. 2d at 400.

Notably, New York federal courts have further recognized that "there is scant case law explaining what it means to 'designate' an employee as a janitor." *See Almonte v. 437 Morris Park, LLC*, No. 14 CIV. 5951 (KPF), 2015 WL 7460019, at *5 (S.D.N.Y. Nov. 24, 2015) (discussing *Koljenovic*, 999 F. Supp. 2d at 400). *Almonte* further held that "*Koljenovic* suggests that the purpose of having an employer 'designate' one employee as a janitor is to force the employer to make a clear, pre-litigation choice about how to compensate its workers." 2015 WL 7460019, at *5. In other words, "[t]he employer can hire one live-in janitor who receives a reduced cash wage, but the employer cannot underpay all of its workers and then claim that the first employee to bring a lawsuit is the 'janitor.'" *Id.* With this rationale in mind, the *Almonte* court has provided that a multi-factor test should be used to determine whether a reasonable jury would necessarily find that Plaintiff was designated as janitor when there are *multiple employees*. *Id.* at

---

[10] Regarding this proposition, the Court agrees with Defendant's Reply at 6 that Plaintiff has miscited *Gjoni v. Orsid Realty Corp.*, 2015 WL 4557037, at *7 (S.D.N.Y. July 22, 2015) (finding that defendants, represented by *defendant's counsel here*, failed to show facts particularized to the plaintiff that his job as a building superintendent fell under the exemption) (Daniels J) (emphasis added). *See* Opp. at 7. While *Gjoni* does support the above proposition regarding Defendant's burden, "Defendant's counsel here" (Mark R. Kook) was not counsel in that case as Plaintiff asserts.

5, 7.  These factors include: "(i) whether Plaintiff was the only employee who lived in the building; (ii) the manner in which Plaintiff and other employees were compensated; (iii) whether Plaintiff was listed as a 'janitor' or 'superintendent' in the employer's official business records; (iv) whether Plaintiff received written notice that he would be compensated as a building janitor; and (v) whether Plaintiff or his employer represented to third parties that Plaintiff was the 'janitor' or 'superintendent.' "  *Id.; see also Calderon v. Mullarkey Realty, LLC*, No. 14CV2616PKCRLM, 2018 WL 2871834, at *12 (E.D.N.Y. June 10, 2018) (applying *Almonte* multifactor test in EDNY).

   2.  *This Court Finds That the Janitorial Exemption Applies to Plaintiff as a Matter of Law*

   Plaintiff concedes that he "was the only sole superintendent janitor who resides in the building" and that "Defendant employed [Plaintiff] as a superintendent and represented him as such to third parties." *See* Opp. at 4.[11]  Furthermore, although "disputed" in Plaintiff's Response to Defendant's Statement of Undisputed Facts, Plaintiff offers no evidence contradicting his admissions both in Plaintiff's Interrogatory responses and deposition testimony that "Plaintiff was the sole Superintendent/Janitor at the Building . . ."  *See* Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 3, ECF 55-1.[12]  Hence, the rationale for employing the multi-factor test in *Almonte* is absent here because Plaintiff does not even allege there were any *other* janitors/superintendents in Defendant's building.

   Relatedly, to the extent Plaintiff attempts to *create* a dispute of material fact by making conclusory denials in his Response to Defendant's Statement of Undisputed Material Facts, such tactics are improper.  Indeed, even *Almonte*, relied on heavily by Plaintiff, provides that: "If the

---

[11] Note, the EDNY has recognized that "building superintendents," in the common parlance of New York City refers to a resident janitor.  *See Koljenovic*, 999 F. Supp. 2d at 400.

[12] For Plaintiff's pertinent Interrogatory admissions and deposition testimony on this point, *see* Plaintiffs Response to Defendant's Int. No. 9, dated November 2, 2020 and Deposition of Plaintiff, Shkumbin Balidemaj, dated March 11, 2021. ("Pl. Tr.") at 10:18-25; ECF 55-5 and ECF 55-7 respectively.

defendant carries its initial burden, the plaintiff cannot respond by reciting 'allegations or denials' contained in the pleading. . . Instead, the plaintiff must point to evidence *in the record* that creates a 'genuine issue for trial.'"  *See Almonte*, 2015 WL 7460019, at *3 (internal citations omitted) (emphasis added).  Moreover, this Court agrees with Defendant's cited authority of *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993) (holding that summary judgment is called for where "it clearly appears that the issues are not genuine, but *feigned*.") (internal quotations and citations omitted) (emphasis added); *see also Trans–Orient Marine Corp. v. Star Trading & Marine Inc.*, 925 F.2d 566, 572 (2d Cir.1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact *by submitting an affidavit disputing his own prior sworn testimony.*") (emphasis added).[13]  Therefore, this Court concludes that the janitorial exemption applies since Plaintiff was the only janitor.

Finally, for comprehensiveness, this Court also notes that given Plaintiff's admissions, the *Almonte* factors clearly support Defendant's position (assuming the test even applied).[14]  First, Plaintiff does not allege that any other employees were living in the building.  Second, while Plaintiff alleges everyone in the Building was paid in the same way (presumably the same *monthly* timeframe), Plaintiff never suggests Defendant underpaid multiple employees at janitorial/reduced rates, which is the key policy concern behind the *Almonte* test.[15]  Third, Plaintiff never alleges that he was not listed as a "janitor" or "superintendent" in the employer's official business records.

---

[13] For ease of reference, these authorities are also cited in Defendant's Reply at 3.  Moreover, this Court also concludes that Plaintiff's case law providing that NYLL exemptions are to be "narrowly construed" does not bolster Plaintiff's position either.  *See* Opp. at 5 (citing *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010), *abrogated on other grounds by Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012)).  Even construing the janitorial exemption narrowly does not change Plaintiff's admissions discussed above.

[14] Given that Plaintiff was the *only* janitor and Defendant was not attempting to pay *multiple* employees with insufficient wages, this further analysis is not even necessary.  However, it is still provided for comprehensiveness.

[15] It is not clear who these other employees were that allegedly got "paid the same" since Plaintiff concedes he was the only janitor in the Building.  Plaintiff does not specify *any* details about these alleged other employees.  *See* Opp. at 6.

Rather, Plaintiff simply omits this factor in his Opposition. Fourth and Fifth, while Plaintiff does allege that he never received written notice that he would be compensated as a janitor, *see* Opp. at 4, Plaintiff concedes that Defendant represented Plaintiff as a janitor to third parties and he was aware of that representation.[16] When taking these facts together, this Court concludes that a reasonable jury must find that Plaintiff was a janitor/superintendent.[17]

**B. This Court Recommends Granting Summary Judgment on Plaintiff's First, Second and Eighth Claims (FLSA Claims) and Third, Fourth, Fifth and Ninth Claims (NYLL Claims) Because Plaintiff Was Fully Compensated for His Hours Worked, Which Did Not Exceed Over Forty Hours Per Week[18]**

*1. Applicable Legal Standard*

"While it is true that New York's Minimum Wage Order exempts certain residential janitors and superintendents from overtime under state law, it does not. . . address obligations under federal law, nor can it." *See Taveras v. D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018). "The Supremacy Clause of the U.S. Constitution prevents New York's Minimum Wage Order from trumping federal law." *Id.* (citing U.S. Const. art. VI, cl. 2.). "Under the FLSA, employees must be paid minimum wage and overtime unless they fall under a specific exemption." *Id.* (citing 29 U.S.C. §§ 206, 207, 213). Hence, "[a]n employer must comply with both state and federal wage laws, and where, as here, the FLSA provides greater protection than state law in terms of minimum wages and payment of overtime, an employer must pay the greater amounts due under

---

[16] The Court also finds that Plaintiff's remaining case law cited is distinguishable and/or irrelevant. *See* Opp. at 5. As a representative example, *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011) merely stands for the general proposition that "[t]he employer who invokes the exemption bears the burden of establishing that the employee falls within the exemption," which Plaintiff does per his own admissions. The same is true for Plaintiff's other case law.

[17] The Court also notes that to the extent Plaintiff claims in his Declaration that he did "*most* major repairs at the subject property, including plumbing repairs, painting, boiler repairs, certain elevator repairs and servicing," *see* Balidemaj Decl. at ¶¶ 9-10 (emphasis added), ECF 55-2, this representation about "most major repairs" was not previously made in Plaintiff's Interrogatory Responses. Even more importantly, these alleged "major repairs" are not listed with specific hours *anywhere* in the record and do not overcome Plaintiff's explicit admission that he realized he was Defendant's *only* superintendent in the Building. *See* Opp. at 4.

[18] Regarding the NYLL Claims, this section concludes that *in the alternative* even if the Janitorial Exemption did not apply, Plaintiff is still not entitled to overtime under the NYLL based upon the number of hours he worked.

federal law." *Id.* (citations omitted).  The question, therefore, is whether there is any factual dispute that Plaintiff actually worked over forty hours per week, which would trigger the "greater protection" under the FLSA that is absent from the NYLL Janitorial Exemption.

   2. *There is No Dispute of Material Fact That Plaintiff Worked Forty Hours Per Week At Maximum*

       When examining the record, this Court concludes there is no dispute of material fact that Plaintiff's hours worked did not exceed forty hours per week.  However, before parsing through the record, it is necessary to reiterate the following principles.  First, as discussed earlier, "[t]he rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony."  *See, e.g.*, *Trans–Orient Marine Corp. v. Star Trading & Marine Inc.*, 925 F.2d 566, 572 (2d Cir.1991); *see also Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.").  Likewise, Plaintiff cannot defeat summary judgment by submitting self-serving affirmations that contradict prior "interrogatories, or affidavits."  *See Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 438 (S.D.N.Y. 2018).  Indeed, such litigation tactics have been referred to as the "sham affidavit" rule.  *See, e.g.*, *Jin Dong Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 259 (E.D.N.Y. 2015).  With these principles in mind, the Court turns to Plaintiff's assertions regarding total hours worked.

       Recall, Plaintiff's Am. Compl. at ¶ 17 states the following, which arguably reads contradictory, or at least unclear:

       Plaintiff frequently worked more than forty hours in a work week without being paid one and half times his hourly wage for hours worked in excess of 40 hours. Plaintiff often worked for upwards of 168 hours every week and he received a remuneration of only $500.00 per week. Plaintiff worked from Monday to Saturday between the hours of 8 a.m to 5pm, variously as a porter, janitor, cleaner and

11

handyman, *a total of 40 hours on Mondays through Saturdays*. For the balance of the days from 5 p.m till 12 midnight and 12.00am till 8am and 24 hours and on Sundays he was on call. And during these periods, he was required to remain physically on the premises. Plaintiff received remuneration of a flat rate of $500.00 per week during this period.

*See* ECF 45 (emphasis added).

Construing the above as most favorable to Plaintiff, this allegation reads that Plaintiff worked forty hours plus some overtime. However, Defendant's Reply at 9, ECF 56, correctly observes that Plaintiff then drastically changes his position by claiming in his Opposition *for the first time* "that he was made to work *6.45am -8pm every day and every Saturday*, instead of the 40-hour work week agreed to by the parties and has never been compensated." *See* Opp. at 10 (emphasis added).[19]  Given Plaintiff's own contradictory statements, the Court will examine the record regarding when Plaintiff was allegedly "on call" and what may constitute "on call" as a matter of law.  To do so, however, the Court must first review the second jobs Plaintiff held during certain years employed by Defendant to provide a fuller picture of Plaintiff's work schedule.

**(a) 2014-2015: Leader of Crew at PBM**

Plaintiff conceded at his deposition that in 2014, he worked as the "Leader" of a crew at PBM LLC ("PBM") in Manhattan.  Plaintiff's hours were 5:30pm to 12:30am, Monday through Friday, and Plaintiff was paid $32,556.00 in 2014.  *See* Plaintiff's Tr. at 87:2-88:13 (referring to Plaintiff's 2014 Tax Return).  More specifically, PBM paid Plaintiff $27-28 an hour, plus overtime. *See id.* at 65:12-21.

Notably, Plaintiff further conceded that Defendant never stated that Plaintiff could not work at his second job with PBM while employed by Defendant.  *Id.* at 92:15-93:17.[20]

---

[19] For ease of reference, Opp. at 10 cites to Plaintiff's own Declaration at ¶ 7.  *See* ECF 55-2 at 7.

[20] The Court notes that Plaintiff claims it was "not necessary" for Defendant to say that Plaintiff could not work at the second job because Plaintiff was still "on call."  *Id.* at 92:21-23.  The Court will address the "on call" argument *infra*, but for now simply notes that Plaintiff concedes Defendant never told Plaintiff that he could not work for PBM.

Plaintiff further testified that he could not recall any specific time in 2014 where he had to leave work at PBM and return to the Building for "an emergency." *Id.* at 99:20-100:5.[21] Likewise, Plaintiff conceded that he could not recall any time in 2014 in which PBM would not pay Plaintiff for hours worked because Plaintiff had to return to the Building in Brooklyn for an emergency. *Id.* at 101:16-23.[22]

Additionally, Plaintiff admitted that he was required to leave Brooklyn by 4:30 or 5:00pm each weekday to ensure he would arrive at work by 5:30pm for PBM Manhattan. *Id.* at 102:13-17. In fact, PBM provided Plaintiff with a company car for this purpose. *Id.* at 88:2-90:4.[23]

Plaintiff also continued to work at PBM for most of 2015. Again, Plaintiff was paid $27-28 an hour, resulting in a gross pay of $65,015 in 2015. *Id.* at 102:18-103:18 (referring to Plaintiff's 2015 Tax Return).

Finally, the Court also notes that, while Plaintiff testified that Defendant's work requirements compelled Plaintiff's wife and son to cover for Plaintiff, *see id.* at 92:13-93:13, Plaintiff could not recall a *single specific instance* in his interrogatories of when this allegedly occurred other than that his son allegedly helping Plaintiff with some snow and garbage removal on some unknown and unidentifiable date. *See* Pl. Interrog. Response 18, ECF 54-18.

---

[21] Again, the Court recognizes that Plaintiff is arguing that "many years have passed by," to recall dates *see Id.* at 100:2-5, but the Court cannot allow Plaintiff's claims to survive summary judgment without listing *any* specific dates.
[22] Like the above, the Court cannot allow Plaintiff's claims to survive summary judgment without *any* specific dates in question.
[23] Note, this Court agrees with Defendant's Reply at 7 that Plaintiff may not abandon his previously sworn deposition testimony discussed above and now claim for the first time in his Declaration/Opposition that Plaintiff "rarely" went to Manhattan. *See* Pl. Decl. at ¶¶ 25-26, ECF 55-2.

### (b) 2015-2017: Foreman at Guardian[24]

Plaintiff also testified that near the end of 2015, Plaintiff left PBM and continued to work a 7-hour second job for another Manhattan employer, Guardian Services Industries ("Guardian"). Plaintiff's hours were from 5:30pm to 12:30am, Monday through Friday.  Guardian paid Plaintiff $27 to $30 an hour, plus overtime.  Plaintiff's Tr. 41:10-20; 105:19-25; and 108:7-14, ECF 54-19.

While at Guardian, Plaintiff worked as Foreman for a maintenance work crew in Manhattan.  Plaintiff did the same work for Guardian as he did for PBM, which involved supervising the crew workers and "check[ing] to see how the work was done."  *Id.* at 111:24-112:15, ECF 54-19; Pl. Interrog. Response 12, ECF 54-18.

Plaintiff indicated that he worked for Guardian at the 55 Water Street and 80 Broad Street locations, as well as various other locations in Manhattan.  *See* Plaintiff's Tr. 111:8-112:18, 113:6-114:12, ECF 54-19; and Pl. Interrog. Responses 10-11, ECF 54-18.

To be clear, Plaintiff claims that he "principally" worked for Guardian from his telephone in his apartment in the Building.  *See* Opp. at 8-10.  However, even if that is true, Plaintiff still conceded at his deposition that he was *always* paid by Guardian ranging from $27 to $30 an hour, for at least 7 hours each workday, in addition to some overtime and weekend work.  In 2016, Guardian paid Plaintiff a total of $93,425.  *Id.* at Plaintiff's Tr. 41:10-20; 105:19-25; 108:7-14; and 109:15-110:16 (referring to Plaintiff's 2016 Tax Return), ECF 54-19.  Importantly, Plaintiff further conceded at his deposition that he could not recall *a single day* in 2016 when he had to leave his

---

[24] As noted *supra*, Plaintiff actually states he worked for Guardian from: "at least 2014 through March 2018 (when he stopped working at the Building)."  *See* Defendant's Statement of Undisputed Material Facts at ¶ 16. However, given that only a 2017 tax statement is mentioned in Plaintiff's deposition testimony discussed in this section, and that Defendant's Mot. at 12 states 2017 as well, the Court will defer to the 2017 cutoff.  This distinction of 2017 v. 2018 does not impact the Court's overtime conclusions anyway.

job at Guardian for an "emergency" at the Building.  *Id.* at 116:19-117:4.[25]  Specifically, Plaintiff

testified that: "maybe this happened once, twice, or I don't know."  *Id.* at 118:25-119:11.

Relatedly, the Court also notes that, as pointed out in Defendant's Mot. at 13, Plaintiff did

not produce a single wage statement or other documentation from PBM or Guardian, showing that

he ever lost a *single day's pay* for having to do "on call" work as Superintendent at the Building.

In fact, all of Plaintiff's Wage Statements from Defendant show that no compensation was ever

deducted by Defendant for missing any work as Superintendent.  *See* Mot. at 10 (citing Affirmation

of Yisroel Landau, Ex. 2 [Payroll Records]), ECF 54-4.

Finally, the record shows that Plaintiff continued his second job at Guardian in 2017.

Specifically, Plaintiff was paid $78,078.00 by Guardian in 2017.  *See* Plaintiffs Tr. at 119:13-24

(referring to Plaintiff's 2017 Tax Return), ECF 54-19.

## (c) This Court is Not Persuaded by Plaintiff's "On-Call" Argument

This Court is also not persuaded by Plaintiff's "on-call" argument.  Plaintiff's Opposition

does not dispute the records and documentation discussed above.  Instead, Plaintiff argues that he

was "on-call" and thus "practically works 24/7."  *See* Opp. at 9.  Glaringly however, Plaintiff does

not cite a *single case* supporting his "on-call" argument.

"The U.S. Department of Labor's regulations promulgated under the FLSA provide that

'[a]n employee who is required to remain on call on the employer's premises or so close thereto

that he cannot use the time effectively for his own purposes is working while 'on call.'"  *See*

*Daniels v. 1710 Realty LLC*, No. 10-CV-0022 RER, 2011 WL 3648245, at \*5 (E.D.N.Y. Aug. 17,

2011), *aff'd*, 497 F. App'x 137 (2d Cir. 2012) (quoting 29 C.F.R. § 785.17).  "When an employee

is *not confined to his home or any particular place and may come and go as he pleases*, the 'hours

---

[25] To clarify, Plaintiff stated "it happened," but, importantly, could not recall any specific days.  *Id.* at 116:19-117:4.

spent 'on call' are not considered as hours worked." *Id.* (quoting *Nonnenmann v. City of New York*, No. 02 Civ. 10131, 2004 WL 1119648 (S.D.N.Y. May 20, 2004) (citing 29 C.F.R. § 778.223) (emphasis added)); *see also Singh v. City of New York*, 524 F.3d 361, 368, n. 4 (2d Cir.2008) (holding that employees may seek compensation for time spent "on call" when their employer restricts their ability to use time freely for their own benefit).

Here, mirroring the language from the precedent above, Plaintiff has conceded that he did the work for his second jobs during "off hours" and that he could physically visit Manhattan *whenever he needed to*. Plaintiff's pertinent testimony is as follows:

> Q. Did you tell Israel Landau in 2015, 2016 and 2017 that you were working at another employer seven hours a day?
>
> A. He knew that.
>
> Q. How did he know that?
>
> A. He knew from me, from my family. So I didn't work - **- I Didn't do this work during the work hours that I had with them. I did this in the off hours. And so what I do, where I go, I'm not - - this is my own problem and my own issue.** But in meantime, when I was doing this other work, there was my wife, my son, that were always on call, and they informed me about everything.
>
> Q. The seven hours a day that you worked for $28 an hour at the other job for the other employer, did you expect 2301 Kings LLC to pay for that time also?
>
> **A. Yes, why not? 100 percent ...**
>
> * * *
>
> Q. Sir, did anyone at 2301 Kings LLC ever tell you that you could not go to work on any particular day for the other employer?
>
> A. No.
>
> **Q. Sir, is it correct that when the other employer paid you $28 an hour for a seven-hour day, that you expected to be paid for**

> **those same seven hours each day by 2301 Kings LLC for the hourly wage 2301 was paying you?**
>
> **A. Yes, of course. And absolutely they have to pay me for that period of time ....**

*See* Plaintiffs Tr. at 32:16-33:1 and 34:6-15 (emphasis added), ECF 54-19.

Per the above, this Court agrees with Defendant's Mot. at 15 that Plaintiff wants to be "double-paid" for the hours he worked at his second jobs, despite his explicit concession that these hours were "off-hours."[26]  Moreover, as discussed *supra*, Plaintiff could not recall a single specific instance when his wife and son actually covered for him.  See Pl. Interrog. Response 18, ECF 54-18.[27]  Thus, this Court concludes Plaintiff was not on call for the hours at the second jobs.[28]

Finally, the Court also notes that even for the periods of time when Plaintiff was not working a second job while employed by Defendant, Plaintiff's Interrogatory responses still warrant summary judgment in favor of Defendant regarding overtime.  Specifically, Defendant's Interrogatory 13 reads as follows, ECF 54-18:

> Set forth by date, each date on which Plaintiff worked for Defendant **later than 5pm until any time before Midnight, the reason he worked past 5pm, the amount of hours worked, the work he was performing each such day,** and if such work was performed in connection with any tenant or tenant's apartment, identify the tenant by name and apartment unit.

---

[26] Notably, Plaintiff does not dispute the pertinent "on-call" precedent discussed above, such as *Daniels*, 2011 WL 3648245, at *5.  Instead, Plaintiff cites precedent that is distinguishable from this case and argues that the Court must simply defer to Plaintiff's recollection of hours worked.  *See* Opp. at 10.  However, Defendant's Reply at 4 n.2 correctly points out that Plaintiff does not cite any case, nor has this Court been able to find any, accepting a plaintiff's recollection of hours worked where Plaintiff's *own statements* are contradictory as occurs here.

[27] Furthermore, Plaintiff also conceded in Pl. Interrog. Response 17, ECF 54-18, that Plaintiff never had to hire a "substitute worker" whose "remuneration [was] paid by Plaintiff."  Specifically, Plaintiff responded "None" when asked to identify any such occasions.  This contradicts Plaintiff's Opp. at 9 arguing that Plaintiff needed to hire a porter before going on vacation.

[28] The Court also notes that Plaintiff previously made a Motion to Compel production of certain text messages that would allegedly bolster his "on-call" claim.  *See* Mot. at 16-17 and ECF 25 [Motion to Compel].  The Court ultimately granted Plaintiff's Motion on this issue, which allowed Plaintiff to issue a subpoena to Telegram.  ECF 28.  However, per the Court's review of the docket, Plaintiff never then sent the subpoena to Telegram.  *See also* Mot. at 17.

(emphasis added).  Glaringly, Plaintiff could only recall *seven instances* in total for his entire time employed by Defendant and did not even list the number/range of hours worked:

> Numerous times, most dates of which plaintiff does not presently recall. Dates and apartments include but not limited to;
>
> Apt 1E- Jan 7, 2018 (Sunday) - 3:51PM snaking the bathtub that lasted well after 6pm until the problem was fixed.
>
> Apt 1M - Dec 29, 2017 (Friday), from 7PM radiator in the kitchen was bad. Went to resident's unit and fixed the problem.
>
> Apt 1M - Jan 7, 2018 (Sunday), from 3PM - No heat in the unit
>
> Apt. 1O - May 31, 2017, 7:19PM, problem with pipes in the kitchen and windows.
>
> Apt 2A- Nov 10, 2017 7:51AM (Saturday), major Leak from the ceiling.
>
> Apt 2A- Jan 7, 2018 (Sunday) 7:27 AM, major Boiler problems
>
> Apt 2J - Oct 24, 2016 2:40 PM (Sunday).
>
> Worked on other Buildings owned by Defendant, including 201 East 18th Street, Brooklyn, New York.  *See Id.*

Similarly, in Interrogatory 14, Plaintiff could also not recall any specific day in which "Plaintiff worked for Defendant later than Midnight until anytime until 7am. . ." and merely mentioned there were some "snow days/nights" and "[e]mergencies including boiler breakdowns." *Id.*[29]

When considering all of the information outlined above, the Court concludes the following facts are undisputed regarding Plaintiff's overtime claims.  First, recall Plaintiff concedes in his Amended Complaint that his actual hours worked during the timeframe of 8:00am to 5:00pm Monday through Saturday, totaled forty.  *See* Am. Compl. ¶ 17.  Second, Plaintiff was not on-call

---

[29] Note, to the extent Plaintiff also argues that he was not compensated for "additional work" in the instances specified in Plaintiff's Decl. ¶ 13, Plaintiff does not list an estimation of hours for any of these alleged instances either.

in 2014-2015 while he worked his second job at PBM Monday through Friday from 5:30pm to 12:30am, plus any overtime.  Likewise, Plaintiff was not on-call in 2015-2017 when he worked his second job at Guardian from Monday through Friday 5:30pm to 12:30am, plus any overtime. Third, Plaintiff has failed to provide *any* specific range of hours of additional time he allegedly worked for Defendant later than 5pm until any time before Midnight,[30]  or for later than Midnight through anytime until 7am.  *See* Plaintiff's See Pl. Interrog. Responses 13-14, ECF 54-18.[31] Therefore, this Court recommends that summary judgment be granted in favor of Defendant on Plaintiff's overtime claims both under the FLSA and NYLL.

3. *There is No Dispute of Material Fact That Plaintiff Was Fully Paid for His Hours Worked Under Both the NYLL and FLSA.*

## (a) Plaintiff Was Fully Compensated as Superintendent under the Applicable Wage Order

Plaintiff asserts he was employed by Defendant from October 27, 2010 to March 8, 2018 when Defendant terminated Plaintiff's services.  *See* Pl. Decl. at ¶ 3, ECF 55-2; Defendant's Mot. at 18.  Plaintiff further claims in his Declaration that his understanding was that "pay was $500.00 a week" for a "40 hours per week job,"  *id.* at ¶ 4, and concedes that he was paid this amount in his Amended Complaint.  *See* Am. Compl. at ¶ 17.  This concession is only a "few dollars short," *see* Defendant's Mot. at 18, from both the applicable Minimum Wage Order and the amount paid reflected in Defendant's Payroll Records.  *See* ECF 54-4 [Payroll Records from January 20, 2012 through March 27, 2018] (reflecting monthly payment of $2,166.67 to Plaintiff).[32]

---

[30] Again, out of the seven specific instances Plaintiff recalled, he did not list the hours worked, despite being requested to do so in Defendant's Interrogatory 13, ECF 54-18.

[31] To the extent Plaintiff claims he made "major repairs" on a "routine" basis, *see* Opp. at 8, such "routine" instances and specific hours worked are not stated in Plaintiff's Interrogatory responses, as discussed above.

[32] To the extent the Payroll Records do not cover Plaintiff's earliest employment by Defendant before January 20, 2012, Plaintiff's concession of $500 per week results in the same summary judgment recommendation based upon the calculations *infra*.

Regarding the applicable minimum wage, Defendant's Motion cites the allegedly applicable minimum wages per week for each year, in which 2017 is the highest at $510.40 per week. *See* Defendant's Mot. at 10. While Defendant does not cite the source for this calculation, it is presumably from the Minimum Wage Order in N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.8. However, assuming that is where Defendant derived its calculations, Defendant is slightly mistaken, because $510.40 is the weekly minimum wage for on or after December 30, *2018* and not 2017. The other wrinkle is whether Defendant's Building should be calculated under the New York City rate rather than the "remainder of Downstate" category Defendant appears to rely on because Brooklyn (the location of Defendant's building) is not specifically mentioned in *either* category. Either way, however, even using the higher New York City rate, Plaintiff's minimum wage due under the NYLL never exceeded **$574.20 per week**.[33]

The above means that, at most, even when using Plaintiff's own calculation of $500.00 per week, Plaintiff is only entitled to an additional $74.20 per week. Moreover, when looking at the Payment Records and $2,166.67 is divided by 4 weeks/28 days, the total Plaintiff received is $505.54 each week. Hence, only **$68.66 per week** is at issue before even considering Plaintiff's *additional compensation* provided by Defendant discussed below.[34]

Additionally, Plaintiff concedes that Defendant gave Plaintiff an apartment in the Building rent-free. *See* Plaintiff's Tr. at 11:2-13:10*; see also* Defendant's Mot. at 19-20.[35] Moreover,

---

[33] To clarify, the Minimum Wage Order in N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.8 was *lower* than this amount in previous years, but even assuming this higher figure was the minimum wage for every year of Plaintiff's employment, that would not change the Court's conclusions here.

[34] The Court largely agrees with Defendant Motion's calculation at 19 n.6 and has confirmed the math as follows: $2,166.67/30 days = $72.22 each day. $72.22 x 28 days (or, 4 weeks) = $2,022.16, or $505.54 each week.

[35] To the extent Plaintiff disputes the market value of Apartment 6B, *see* Plaintiff's Decl. at ¶ 35 (arguing that the market value is only $1,400.00 instead of $2,000.00), such a dispute is immaterial given Plaintiff's concession discussed *supra* that he was paid $500.00 per week, *in addition to* receiving the rent-free apartment. Indeed, as a last resort, Plaintiff argues that he was never told the apartment was "part of [his[ compensation" even though he received the apartment rent-free. *See* Plaintiff's Response to Defendant's Undisputed Material Facts at ¶ 47, ECF 55-1. Yet, Plaintiff *does* describe the apartment as: "As compensation for [Plaintiff's] services" in Am. Compl. ¶ 11.

Plaintiff also conceded that he did not pay for utilities in either of the apartments 1C or 6B while employed as Superintendent.  *Id.* at 13:7-10; ECF 55-7.[36]  Furthermore, Defendant has provided documentation that he paid at least $50.00 per month for Plaintiff's phone bill from June 27, 2011 through June 26, 2017.  *See* ECF 54-9.

Rather than dispute the above in his Opposition,[37] Plaintiff merely focuses on the last two weeks of his employment and argues that "[t]t is also undisputed that defendant paid plaintiff his monthly salary of $2,166.67 for January 2018 and February 2018 for a total sum of $4,333.00" and that "Plaintiff is therefore owed compensation for the period February 28, 2018 to March 8, 2018."  *See* Opp. at 6.    However, as Defendant's Reply at 1-2 notes, this is a factual error by Plaintiff as shown by the record.   Indeed, Plaintiff concedes in both his Declaration and the Opposition that he was paid the "28th day of a month to the 27th day of the *next month*."  *See* Plaintiff's Decl. ¶ 18, ECF 55-2 and Opp. at 6 (emphasis added).  Most importantly, the actual Payroll Records at ECF 54-4 [Payroll Records] show the last payment made on February 28, 2018 covered *through March 27, 2018*, nearly two weeks *after* Plaintiff's employment terminated.  *See also* Defendant's Reply at 1-2.  Therefore, Plaintiff's minimum wage claim fails under the NYLL and applicable Minimum Wage Order.[38]

---

[36] To be clear, Plaintiff stated Defendant only paid for *some* of Plaintiff's utilities in Plaintiff's Decl. at ¶ 34 and that Defendant's utility bill calculations are incorrect, especially considering that the bills Defendant attached at ECF 54-8 [Utility Payments] are *after* Plaintiff lived in apartment 6B (Plaintiff was terminated March 8, 2018).  While some charges are from 2019, several are from the correct time period and even looking at the first page of this exhibit shows a ConEdison September 2015 payment of $82.51, which alone covers the difference of $500.00 and $574.20 for one week of a month.

[37] Notably, Plaintiff does not dispute the weekly calculations or Minimum Wage Order figures *anywhere* in the record.

[38] Based upon the Court's conclusions above, this Court also concludes that Plaintiff's Ninth Cause of Action does not survive summary judgment, alleging Failure to Provide Wage Statements under N.Y. Lab. Law § 195(3). and N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.2.  *See* Am. Compl. at ¶¶ 49-51.  As Defendant's Mot. at 24-25 correctly points out, full payment of wages is a complete defense to a Wage Statement claim.  *See Tortorici v. Bus-Tev, LLC*, No. 17CV7507PACKHP, 2021 WL 4177209, at *15 (S.D.N.Y. Sept. 14, 2021) (holding that "there is no merit to Plaintiff's argument" where "Plaintiff concedes that he was always paid on time. . ."); *Veracka v. MLD Mortg. Inc.*, No. 16CV7152WFKAYS, 2021 WL 2662007, at *10 (E.D.N.Y. Apr. 1, 2021) (same).

**(b) Plaintiff Was Fully Compensated Under the FLSA**

This Court also concludes that Plaintiff was fully compensated under the FLSA.  The FLSA has a two-year statute of limitations period, which becomes three years if the violation was willful.  *See* 29 U.S.C. § 255(a).[39]  Either way, however, given this Court's conclusions *supra* that Plaintiff worked no more than forty hours per week, the two or three-year distinction does not alter the Court's conclusions/calculation below.  To illustrate, the Court will calculate how much Plaintiff was entitled to under the FLSA from the period of August 2, 2017 (two years before the commencement of this action) and Plaintiff's last day of employment on March 8, 2018, compared to Plaintiff's actual pay.[40]  Plaintiff claims he was entitled to the hourly minimum wage, which was $7.25 under 29 U.S.C. § 206(a)(1)(C).[41]  Hence, the math is as follows:

Since Plaintiff worked no more than 40 hours per week, $7.25 times 40 hours is $290.00 per week.  Given that there are 218 days between August 2, 2017 through March 8, 2018, which is 31.14 weeks (rounded up to 32 for ease of calculation), Plaintiff is entitled to no more than $9,280.00 ($290 times 32 weeks).[42]  Yet, Plaintiff concedes he was paid $500.00 a week as discussed *supra*.  This totals $16,000.00 ($500.00 times 32 weeks).[43]  Therefore, this Court

---

[39] Since the willfulness issue does not impact the Court's conclusion, this Court declines to do any further statute of limitations analysis.

[40] Again, since the statute of limitations or accrual dates do not alter the Court's conclusion regarding Plaintiff's FLSA minimum wage claim, no further analysis or discussion of accrual dates is needed.  The above is simply a representative example to show why Plaintiff's FLSA minimum wage claim does not survive summary judgment *regardless* of what time period is used.

[41] Note, Defendant uses the correct figure, *see* Defendant's Mot. at 21, but Plaintiff's Amended Complaint uses the incorrect figure of $7.15.  To ensure the correct calculation under the applicable law, the Court will use $7.25 per hour, which still does not change the Court's conclusion.

[42] Given the Court's analysis *supra*, there is no overtime to be included.  The Court also notes that the $9,280.00 differs from Defendant's Mot. at 21 with the calculation of $8,700.00 since Defendant's Motion used a figure of 30 weeks instead of 32.

[43] Recall that Plaintiff's Payroll Records show when $2,166.67 is divided by 4 weeks/28 days, the total is actually $505.54 each week (rounded down above for ease of calculation).  Finally, to the extent Defendant's Mot. at 21-22 argues that Plaintiff would have received excess pay/overtime hours, this Court does not see a need to determine how much the excess compensation would have been because this Court has already concluded Plaintiff is not entitled to any overtime to begin with.

recommends that summary judgment should be granted against Plaintiff's FLSA minimum wage claim as well.[44]

### C. This Court Also Recommends Granting Summary Judgment in Favor of Defendant on Plaintiff's Breach of Contract and Unjust Enrichment Claims

*1. This Court Recommends Granting Summary Judgment in Favor of Defendant on Plaintiff's Brief of Contract Claim Because Plaintiff Fails to Identify Any Agreement at Issue*

This Court concludes Plaintiff's Seventh Cause of Action for breach of contract does not survive summary judgment because Plaintiff does not even identify a specific agreement, let alone particular terms, at issue. It is well established that for all breach of contract claims, there must be: "(1) the existence of a contract between [plaintiff] and th[e] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by th[e] defendant; and (4) damages to the plaintiff caused by th[e] defendant's breach." *See, e.g.*, *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 470 (E.D.N.Y. 2012) (internal quotations and citations omitted). Moreover, "[f]or a contract to exist there must be 'a manifestation of mutual assent *sufficiently definite* to assure that the parties are truly in agreement with respect to all material terms.'" *Id.* (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't. of Transp.*, 93 N.Y.2d 584, 589 (1999)) (emphasis added).

Here, Plaintiff's Amended Complaint merely alleges that: "Defendant agreed to reimburse Plaintiff for expenses he incurred while working for Defendant, but has failed to do so. He also failed to reimburse Plaintiff for monies expended by him to repair and renovate to habitable standards, the apartment which was assigned to Plaintiff as his residence." *See* Am Compl. at ¶ 44, ECF 45. Yet, Plaintiff concedes in his Decl. at ¶¶ 28-29 that he was "unable to locate the

---

[44] Given that this Court concludes that Plaintiff was fully compensated under the FLSA and that no overtime is due, this Court also recommends granting summary judgment against Plaintiff for Plaintiff's Eighth Cause of Action for Failure to Keep Accurate Time Records regarding overtime. *See* ¶¶ Pl. Am. Cl. at 46-48.

receipts for the purchases that I made. . ."[45] and does not even mention an alleged agreement that this breach of contract claim is based upon.  *See also* Defendant's Mot. at 23-24.

Finally, Plaintiff also does not even mention the breach of contract claim in Plaintiff's entire Opposition besides a brief cursory sentence in the Preliminary Statement at Opp. at 1 ("Plaintiff also alleges that defendant willfully violated FLSA. In addition, plaintiff action also includes causes of action for *breach of contract*, unjust enrichment, and defendant's failure to keep accurate time records") (emphasis added).   This provides another independent basis for granting Defendant's Motion on the breach of contract claim because: "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."  *See, e.g.*, *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified*, No. 01-CV-5750 (ILG), 2003 WL 21781941 (E.D.N.Y. July 29, 2003).  Hence, this Court concludes summary judgment against Plaintiff is appropriate on the breach of contract claim.

2. *This Court Recommends Granting Summary Judgment in Favor of Defendant on Plaintiff's Unjust Enrichment Claim Because Plaintiff Fails to Identify Any Expenses*

This Court also recommends granting summary judgment in favor of Defendant on Plaintiff's Sixth Cause of Action for unjust enrichment based upon Plaintiff's failure to even identify any specific expenses at issue.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience

---

[45] To the extent that Plaintiff also argues that certain materials purchased by Defendant reflected in ECF 54-13 [alleged Renovation Expenses for Apt. 6B produced by Defendant] were not, in fact, used to renovate Apartment 6B, *see* Plaintiff's Decl. at ¶¶ 28-29, Plaintiff's contention, even if true, does not raise a dispute of material fact.  This is because Plaintiff himself cannot identify a *single expense* for this renovation. The closest Plaintiff comes to identifying any such renovation expenses is Plaintiff's Response to Interrogatory 23, *see* ECF 54-18, but Plaintiff does not list any costs and merely says: "Gut renovation of Plaintiff's apartment, including installation of new walls, floors, bathroom, light fixtures, new refrigerator and stove."

require restitution." *See, e.g.*, *Brenner v. Brenner*, 821 F. Supp. 2d 533, 540 (E.D.N.Y. 2011) (internal quotations and citations omitted).  Moreover, summary judgment against an unjust enrichment claim is appropriate where the unjust enrichment claim is "duplicative of the breach of contract cause of action."  *See Green Complex, Inc. v. Smith*, 107 A.D.3d 846, 849 (2d Dep't 2013); *Chiropractic Neurodiagnostic, P.C. v. Allstate Ins. Co.*, No. 08-CV-2319 SJF/AKT, 2009 WL 210866, at *5 (E.D.N.Y. Jan. 26, 2009) ("Similarly, plaintiff's third cause of action for unjust enrichment *merely restates plaintiff's breach of contract cause of action* and fails to state a tort independent of defendant's contractual obligations.") (emphasis added).

Here, Plaintiff's Amended Complaint merely alleges that: "Defendant failed to reimburse Plaintiff for expenses he incurred while working for Defendant and for advanced rent and security deposit."  *See* Am Compl. at ¶ 41, ECF 45.  Yet, as with the expenses in the breach of contract claim discussed above, Plaintiff does not identify any such expenses or even mention the security deposit in his Opposition.[46]  In fact, like the breach of contract claim, Plaintiff never mentions unjust enrichment except in the same cursory sentence mentioned above.  *See* Opp. at 1 ("Plaintiff also alleges that defendant willfully violated FLSA. In addition, plaintiff action also includes causes of action for breach of contract, *unjust enrichment*, and defendant's failure to keep accurate time records") (emphasis added); *see also* Defendant's Mot. at 22-24.  Finally, Plaintiff also does not allege any damages for the unjust enrichment claim separate and apart from the breach of contract claim, meaning it is duplicative.  For these reasons, this Court concludes summary judgment should also be granted against Plaintiff with respect to Plaintiff's unjust enrichment claim.

---

[46] The closest Plaintiff comes to addressing these expenses is in Plaintiff's Response to Interrogatory 22, *see* ECF 54-18, where Plaintiff states: "Defendant failed to reimburse Plaintiff for the complete renovation of Plaintiff's apartment. Plaintiff further responds that Responsive documents are being produced."

## V.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment be granted in its entirety.

## VI.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

          /s/ Steven L. Tiscione
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
August 25, 2023